1  MICHAEL I. KATZ, State Bar No. 181728
    *MKatz@GGTrialLaw.com*
2  FRANK MICKADEIT, State Bar No. 293520
    *FMickadeit@GGTrialLaw.com*
3  GREENBERG GROSS LLP
   650 Town Center Drive, Suite 1750
4  Costa Mesa, California 92626
   Telephone: (949) 383-2800
5  Facsimile: (949) 383-2801

6  Attorneys for Plaintiffs

7           **UNITED STATES DISTRICT COURT**

8    **CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

| | |
|---|---|
| 9  US Nutrilab, a California corporation; and Strong T. Nguyen, an individual, | **Case No.** |
| 10 | |
| 11           Plaintiffs, | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF:** |
| 12           v. | **1.  Trademark Infringement (Lanham Act § 32)** |
| 13  Huong Thanh Nguyen, aka Hai Le, an individual; Tu Thien The Mobil Inc., aka Tu Thien Mobil, a California corporation; Tu Thien The 2 Chieu, Inc., a California corporation; Khanh Van Nguyen, an individual; Khanh Van Nguyen dba USA Logic; DKY LLC dba NutriCel Gold, | **2.  False Designation of Origin (Lanham Act § 43(a))** |
| | **3.  Trade Dress Infringement (Lanham Act § (43(a))** |
| | **4.  Contributory Trademark Infringement (Lanham Act § 32)** |
| | **5.  Contributory False Designation of Origin (Lanham Act § 43(a))** |
| | **6.  Contributory Trade Dress Infringement (Lanham Act § 43(a))** |
| | **7.  Common Law Trademark Infringement** |
| | **8.  Copyright Infringement (17 U.S.C. § 101 et seq.)** |
| | **9.  Contributory Copyright Infringement (17 U.S.C. § 101 et seq.)** |
| | **10. Fraud** |
| | **11. Constructive Fraud** |
| | **12. Breach of Fiduciary Duty** |
| | **13. Breach of Contract** |
| | **14. Breach of the Covenant of Good Faith and Fair Dealing** |
| | **15. Conversion** |
| | **16. Tortious Interference With Contract** |
| [Caption Continued on Next Page.] | **17. Slander** |
| | **18. Slander Per Se** |

Defendants.

**DEMAND FOR JURY TRIAL**

Complaint filed:    April 26, 2016
Trial date:        None set

## <u>NATURE OF THE ACTION</u>

1.      This is an action in law and equity to recover and restore a business that was effectively stolen from an immigrant by fellow immigrants – including one convicted fraudster – who ruthlessly took advantage of the individual plaintiff's good and generous nature, his relative inexperience in business and the U.S. legal system, and his lack of English skills.

2.      Plaintiff Strong T. Nguyen is the owner of the trademark for the dietary supplement Cordyceps 950, which is on the United States Patent and Trademark Office Supplemental Register, No. 4,762,227.  A true and correct copy of the certificate of registration dated June 23, 2015 is attached hereto as Exhibit A and incorporated herein by reference.

3.      Plaintiff Strong T. Nguyen has applied for a copyright application with the United States Copyright Office for his Cordyceps 950 label designs, which are original pictorial, graphic, and sculptural works, and has been given then application number 1-3333010331.   Attached hereto as Exhibits B, C, and D, respectively, and incorporated herein by reference are true and correct copies of photographs of labels for the 30-capsule, 60-capsule, and 90-capsule bottles Cordyceps 950, as filed with the United States Copyright Office.

4.      The individual defendants, whom Strong Nguyen once trusted as business partner and associate, respectively, pirated Plaintiff's Cordyceps 950 mark, trade dress, and copyright; converted thousands of dollars in products; defrauded him; and defamed him and the product he worked diligently to bring to market. Making the defendants' behavior all the more egregious is that they urged Strong Nguyen to leave the United States for a business trip so that they could make their

moves while he was 8,000 miles away and unable to defend his property.  While Strong Nguyen was in Vietnam, one defendant removed virtually all of the inventory from the company warehouse and the other went to Strong Nguyen's home (with Strong Nguyen's unwitting permission) and "borrowed" $20,000 from his wife.

5.     Defendant Huong Thanh Nguyen, aka Hai Le, was convicted in federal court in 2006 of helping to run a bank fraud scheme, for which he was sentenced to 32 months in prison and ordered to pay $1,000,000 in restitution.  Needless to say, had Huong Thanh Nguyen told Strong T. Nguyen that he had been convicted of fraud, Strong Nguyen never would have done business with him, let alone lent him money.  Concealment of this material fact is itself a fraud.

6.     Accordingly Plaintiff Strong T. Nguyen and his company, US Nutrilab, bring this action for trademark infringement of the Cordyceps 950 mark, copyright infringement, fraud, and related activities that are in violation of federal and state laws.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1338 (acts of Congress relating to trademarks and copyrights), and 28 U.S.C. § 1367(a) (supplemental jurisdiction over state law claims).

8.     Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b)(1) because at least one (if not all) of the Defendants resides in this judicial district, and all Defendants are residents of the state of California.

9.     Venue is also proper in the Central District of California pursuant to 28 U.S.C. § 1391(b)(2) because all or a substantial part of the events and omissions giving rise to each of the claims occurred in this judicial district.

## PARTIES

10.     Plaintiff US Nutrilab is a corporation organized and formed under the laws of the State of California, with its principal place of business in Orange

County, California.

11.     Plaintiff Strong T. Nguyen is, and at all times mentioned in this Complaint was, an individual residing in Orange County, California.

12.     Defendant Huong Thanh Nguyen is, and at all times mentioned in this Complaint was, an individual residing in Orange County, California.

13.     Defendant Tu Thien The Mobil Inc., also known as Tu Thien Mobil, is a corporation organized and formed under the laws of the State of California with its principal place of business in Orange County, California.

14.     Defendant Tu Thien The 2 Chieu, Inc., is a corporation organized and formed under the laws of the State of California with its principal place of business in Orange County, California.

15.     Defendant Khanh Van Nguyen is, and at all times mentioned in this Complaint was, an individual residing in Orange County, California.

16.     On information and belief, Defendant USA Logic is, and at all times mentioned in this Complaint was, a dba for Defendant Khanh Van Nguyen, who resides in Orange County, California.

17.     On information and belief, Defendant NutriCel Gold is, and at all times mentioned in this Complaint was, a dba for DKY LLC, a limited liability company formed under the laws of the State of California with its principal place of business in Orange County, California.

18.     Plaintiffs are informed and believe, and based thereon allege, that any individuality and separateness between Defendants Huong Thanh Nguyen and Tu Thien The Mobil, Inc. have ceased, funds have been co-mingled, Huong Thanh Nguyen has used assets of the business for his own personal purposes, and Tu Thien The Mobil, Inc. is the alter ego of Huong Thanh Nguyen.  Adherence to the fiction of the separate existence of Defendants Huong Thanh Nguyen and Tu Thien The Mobil, Inc. would permit an abuse of the corporate privilege, and would promote injustice.  Therefore, Huong Thanh Nguyen should be held joint and severally liable

1    to Plaintiffs for any and all wrongdoing by Tu Thien The Mobil, Inc.

2        19.    Plaintiffs are informed and believe, and based thereon allege, that any

3    individuality and separateness between Defendants Huong Thanh Nguyen and Tu

4    Thien The 2 Chieu, Inc. have ceased, funds have been co-mingled, Huong Thanh

5    Nguyen has used assets of the business for his own personal purposes, and Tu Thien

6    The 2 Chieu, Inc. is the alter ego of Huong Thanh Nguyen.  Adherence to the fiction

7    of the separate existence of Defendants Huong Thanh Nguyen and Tu Thien The 2

8    Chieu, Inc. would permit an abuse of the corporate privilege, and would promote

9    injustice.  Therefore, Huong Thanh Nguyen should be held joint and severally liable

10   to Plaintiffs for any and all wrongdoing by Tu Thien The 2 Chieu, Inc.

11       20.    Plaintiffs are informed and believe, and based thereon allege, that any

12   individuality and separateness between Defendants Khanh Van Nguyen and DKY

13   LLC dba NutriCel Gold have ceased, funds have been co-mingled, Khanh Van

14   Nguyen has used assets of the business for his own personal purposes, and DKY

15   LLC dba NutriCel Gold is the alter ego of Khanh Van Nguyen.  Adherence to the

16   fiction of the separate existence of Defendants Khanh Van Nguyen and DKY LLC

17   dba NutriCel Gold would permit an abuse of the corporate privilege, and would

18   promote injustice.  Therefore, Khanh Van Nguyen should be held joint and severally

19   liable to Plaintiffs for any and all wrongdoing by DKY LLC dba NutriCel Gold.

20                           **FACTUAL ALLEGATIONS**

21       **Strong Nguyen and Khanh Nguyen Begin Doing Business Together.**

22       21.    Plaintiff Strong is a small businessman who immigrated to the United

23   States from Vietnam in 2002 to escape the communist regime and rejoin his father,

24   who had fled the country two decades earlier.[1]  Strong possessed a degree in

25   business administration from a Vietnamese university, but had – and still has –

26   _____

27       [1] Because all three of the individual parties have the same surname, the
     Complaint hereinafter refers to them by their first names.  No disrespect is intended

28   to any party in doing so.

limited English skills.  Strong began working in the shipping business in Southern California, where he met Defendant Khanh in or about 2003.  Khanh, who goes by his Americanized name, "Ken," had superior English skills and was already an established businessman.  Khanh shipped cosmetics and supplements he manufactured from the shipping business where Strong worked, and he befriended the younger, less-experienced Strong.

22.     In or about 2010, Strong began purchasing *cordyceps sinensis*, which is a fungus and parasite that in its native state grows on the larvae of a certain moth that lives in mountainous regions of Tibet, Nepal, and India.  It has long been used in Eastern medicine to treat a variety of ailments, or simply to promote long life.  In modernity, it may be reproduced in controlled environments, ground into powder, and sold in capsule form.  Strong initially purchased *cordyceps sinensis* from an out-of-state supplier for personal use, but then began shipping it to friends and relatives in Vietnam.

23.     In late 2014, Strong and Khanh decided to form a business together called US Nutrilab that would sell dietary supplements and cosmetics, including a *cordyceps sinensis* product that Strong would develop.  Khanh would make Nature Nano, a medicinal oil that he had been selling under the name USA Logic.  Under the new partnership, USA Logic would initially perform some duties for US Nutrilab, such as ordering raw *cordyceps sinensis* from a supplier.

24.     Under their agreement, Khanh was to order the raw materials for their products and arrange for manufacturers to make it, package it, and send it to US Nutrilab's headquarters and warehouse in Fountain Valley, California.  Strong's role was to market and sell the product, and arrange for shipping to retailers and distributors, some of whom US Nutrilab awarded exclusive rights to territories and marketing channels.

25.     In late 2014, US Nutrilab decided to create and bring to market its first product, Cordyceps 950, which were capsules containing 950 milligrams each of

100 percent, USDA-approved *cordyceps sinensis*.  US Nutrilab sold and shipped its first batch of Cordyceps 950 in November 2014, to a retailer in Ho Chi Minh City, Vietnam.

26.     In January and February 2015, sales to Vietnam increased.  Early in 2015, sales began in various United States markets.  Over the next year, Strong would travel throughout the United States, including to New York, Florida, Texas, Arizona, and Hawaii, meeting with and lining up distributors and retailers.

27.     In April 2015, Strong and Khanh entered into an agreement to incorporate US Nutrilab, with each party owning 50% of the shares.  The company filed its incorporation papers with the California Secretary of State on April 23, 2015.  Strong was president and chief executive officer; Khanh was secretary and chief financial officer.

28.     In June 2015, Strong and Khanh were granted registration for Cordyceps 950 on the Supplemental Register of the United States Patent and Trademark Office.

29.     In October 2015, Strong and Khanh applied for the trademark Cordyceps Special.  Cordyceps Special is a cordyceps product that Strong developed and brought to market that contains a higher concentration of *cordyceps sinensis* than Cordyceps 950.  Cordyceps Special is also sold by US Nutrilab, although in lesser quantities than Cordyceps 950.

**US Nutrilab Enters Exclusive Agreement with Manufacturer Titan Medical Enterprises to Make Cordyceps 950.**

30.     Titan Medical Enterprises ("Titan") is a manufacturer of various pharmaceutical products.  It also operates under the names Crown Labs USA and US Apothecary Labs.  At all relevant times, Titan has accepted raw *cordyceps sinensis* that US Nutrilab or its agents purchased from a confidential out-of-state supplier, which encapsulated, bottled, and labeled it for US Nutrilab.

31.     On September 2, 2015, US Nutrilab and Titan entered into an exclusive

agreement whereby, among other things, Titan agreed to (1) sell products sourced from the confidential out-of-state supplier only to US Nutrilab; (2) to manufacture said products only for US Nutrilab; (3) not to sell said products to other buyers, solicitors, or exporters; (4) not to manufacturer pure cordyceps from any source into products for other buyers, solicitors, or exporters; and (5) "to keep . . . information [regarding the confidential supplier] private and strictly confidential."

32.    Attached hereto as Exhibit E and incorporated herein by reference is a true and correct copy of the agreement between US Nutrilab and Titan.[2]

**Cordyceps 950 Sales Take Off, and Strong Nguyen and Huong Nguyen Begin Doing Business Together.**

33.    US Nutrilab began wholesaling Cordyceps 950 to Defendant Tu Thien Mobil, the company owned by Defendant Huong, in February 2015.  Huong had no knowledge of cordyceps; Strong taught him about the product and how to sell it. Strong started directing regional distributors and retailers to buy from Huong and Tu Thien Mobil.

34.    Huong, through Tu Thien Mobil, sold Cordyceps 950 to retail stores in densely Vietnamese-American neighborhoods and also directly to consumers via lengthy advertisements on Vietnamese-language television, radio, and the internet. The advertisements ran on radio stations that served Vietnamese-Americans in several large metropolitan areas, including Orange County, California, San Jose, California, and Houston, Texas.  The television commercials were broadcast on a Vietnamese-language satellite channel that reached the entire North American market.  The internet advertisements literally had global reach.

35.    The infusion of Cordyceps 950 into the Vietnamese-speaking marketplace, at first by Strong and then with the assistance of Huong, built brand

---

[2] Because the name of the supplier is a trade secret, Plaintiffs at this time redact the name from the exhibit and at the appropriate time will make a motion to file the unredacted document under seal.

1 identity quickly, and Huong told Strong that he was eager to get as much of the
2 product as possible.

3    36.    From February 2015 onward, US Nutrilab sold approximately 70,000
4 bottles of Cordyceps 950 to Tu Thien Mobil.  In the early months of the business
5 relationship, the transactions were all in cash and no purchase orders or receipts
6 were written.

7    37.    Huong, however, was harboring a dark secret from Strong.  In 2005,
8 Huong was indicted by a federal grand jury in Seattle, Washington for his role in a
9 Vietnamese-American-led crime syndicate that defrauded three major banks by
10 impersonating legitimate account-holders in order to withdraw funds.  Huong role,
11 according to the United State Attorney's Office, was to use sources he had within
12 Starbucks Corp. and the banks to steal the personal identity and financial
13 information of Starbucks employees.  Huong used this information to create false
14 identification cards and counterfeit checks used to withdraw money at banks
15 throughout the western United States.  An Assistant United States Attorney
16 characterized Huong as "the right arm" of the gang leader and mastermind, and said
17 Huong was also involved in organizing the people who would pass the counterfeit
18 checks.  Altogether, the crew stole more than $1,500,000 from the accounts of
19 Starbucks employees and others before they were caught.

20    38.    Huong pleaded guilty and was sentenced to 32 months in prison and
21 ordered to pay $1,000,000 in restitution.  He was released in 2007 and returned to
22 Orange County.

23    39.    Needless to say, had Strong known any of this, he would not have
24 entered into a business relationship with Huong.

25    **Khanh Nguyen and Huong Nguyen Conspire to Take Over US Nutrilab's**
26    **Cordyceps Market and Freeze Out Strong Nguyen.**

27    40.    At least as early as January 2016, Huong and Khanh conspired and
28 colluded to effectively steal Strong's share of the business and shut down Strong's

and US Nutrilab's ability to make and sell Cordyceps 950 and Cordyceps Special.

41.     In January 2016, Huong and Khanh pushed Strong to make Huong's company, Tu Thien Mobil, the exclusive distributor of US Nutrilab products in the Vietnamese community in the United States – by far US Nutrilab's largest distribution channel and the source of most of its revenue.

42.     Under the agreement (the "January 2016 Agreement"), which was drafted in English by Khanh, Tu Thien Mobil was granted the right to "purchase and distribute Products as manufactured by Supplier exclusively to all the Vietnamese communities in the USA."

43.     The agreement did not expressly grant US Nutrilab many rights, a fact that escaped Strong because of his limited English skills, of which Khanh and Huong were well aware.  Strong, furthermore, trusted Huong, and based upon the manner in which they had been conducting business for nearly a year, Strong believed that the reciprocal obligations of exclusivity were conferred to US Nutrilab as well, and that Huong would not compete with him.  Huong and Khanh, however, intended that the agreement would handcuff Strong and US Nutrilab once they wrested the cordyceps market from them.

44.     The parties executed the agreement on January 21, 2016.  Strong signed the agreement on behalf of US Nutrilab; Huong signed on behalf of Tu Thien Mobil.  Attached hereto as Exhibit F and incorporated herein by reference is a true and correct copy of the January 2016 Agreement.

45.     The next significant move in the plot was to create the business entity that would assume the role of cordyceps distributor once Khanh and Huong had muscled Strong and US Nutrilab out of the picture.  On February 24, 2016, Khanh, without informing Strong, registered DKY LLC as a limited liability company with the California Secretary of State.  Yen Duong, a business associate of Huong's and Khanh's, then filed a trademark application for the name NutriCel Gold, and Khanh registered the name NutriCel Gold as a dba of DKY LLC.

46.     On February 27, 2016, Khanh suggested Strong take a trip to Vietnam in order to expand the US Nutrilab business.  Strong did not feel he needed to go to Vietnam on behalf of US Nutrilab at that point, but Khanh urged him to go, and said that as a partner in the company, Khanh would have no objection if he splurged and traveled leisure class.  Strong booked a trip for himself for two weeks hence.

47.     Next, Khanh put in place the mechanism by which once Strong was out of the country Khanh would be able to cleanly sever his ties with Strong and take with him half of the company cash and inventory, as well as the rights to the medicinal oil products that he had developed for US Nutrilab.  On March 4, 2016, Khanh asked Strong to sign an agreement setting forth their responsibilities and obligations to each other with respect to US Nutrilab, and setting forth the procedure for winding up the company should either decide to cease continuing in business with the other (the "March 2016 Agreement").

48.     Khanh told Strong the reason for the agreement was that he anticipated getting married soon and wanted to protect Strong in case the marriage ended in divorce and his spouse tried to claim a share of US Nutrilab.  Strong trusted Khanh and believed he had his best interests at heart, so he signed the agreement.  Strong had no inkling that Khanh was actually planning to unilaterally sever their business relationship while he was 8,000 miles away in Vietnam, let alone that he was conspiring with Huong.

49.     Among other things, the March 2016 agreement called for each party: (1) to be "100% transparent" with each other in their dealings with company finances; (2) to notify the other party "ASAP" if he entered into a business transaction valued at $10,000 or more; and (3) to notify the other party at least one month in advance if he decided not to continue the partnership.

50.     With respect to the winding up of the business, the March 2016 Agreement called for, among other things, (1) Strong and Khanh to divide the cash in the company bank accounts and all inventory 50-50; (2) Strong to take ownership

of the Cordyceps 950 trademark and Cordyceps Special brand; (3) Strong to take ownership of the company name US Nutrilab, and (4) Khanh to take ownership of the Nature Nano oil mark and brand.

51.     On March 10, 2016, Strong embarked, alone, on what was intended to be a two-week business trip to Vietnam.

52.     The next day, March 11, unbeknown to Strong, Khanh had approximately $159,860 worth of US Nutrilab product taken from the company warehouse and delivered to Huong at Tu Thien Mobil.  The products included $139,700 worth of cordyceps, including the brands Cordyceps 950 and Cordyceps Special.  This amounted to 100 percent of all of the cordyceps products in warehouse and far in excess of the 50 percent of all product that Khanh would be entitled to under the March Agreement.  However, at this point Khanh was not entitled to any product whatsoever since he had not notified Strong of his desire to leave U.S. Nutrilab, much less given the required one-month notice.

53.     On or about March 15, 2016, Huong called Strong in Vietnam and asked him to borrow $20,000, promising to pay him back in three weeks.  Having no idea a conspiracy was afoot, Strong directed Huong to go to his house in Orange County, where Strong's wife, at Strong's direction, gave Huong $20,000 in cash.

54.     Huong has never repaid the loan, nor did he intend to.  A week prior, on March 7, 2016, Huong, unbeknownst to Strong, had applied to the United States Patent and Trademark Office for the trademarks Cordyceps HL and Cordyceps HL Special.

55.     On March 16, while Strong was still in Vietnam, he received an email from Khanh stating that he was withdrawing from the US Nutrilab corporation and had taken half of the money from the company bank account.  The email was timed to reach Strong in Vietnam at 2 a.m. on March 17.

56.     Deeply troubled, Strong returned to from Vietnam earlier than scheduled, arriving back in Orange County on or about March 20.  He discovered

that in addition to abandoning the company in violation of the agreement they had just signed, Khanh had also taken the US Nutrilab inventory.  At that point, however, Strong had not yet connected the activities of Khanh to those of Huong.

57.    His inventory depleted, on or about March 22, Strong went to the Titan manufacturing facility in Santa Fe Springs, California, to order more Cordyceps 950.  Titan's owner told Strong that he could not fill the order because *three weeks prior* Khanh had placed an order of cordyceps capsules on behalf of a new company that Khanh had formed.  Khanh's new company was therefore ahead of him in the production line.  Furthermore, the owner told Strong, because US Nutrilab was in arrears by $32,000 for previous manufacturing orders, Titan was not obligated to stop Khanh's production to satisfy US Nutrilab's needs.  This was when Strong discovered that Khanh had intentionally failed to pay the $32,000 bill in order to both keep more cash for himself and also to sabotage US Nutrilab.

58.    On or about March 25, 2016, Huong called Strong asked him to loan him $25,000, which Huong told Strong he needed for one of his business entities, Tu Thien The 2 Chieu, Inc.  On March 28, Strong gave him a $25,000 cashier's check, payable to Tu Thien The 2 Chieu, Inc., with the understanding that the company or Huong would pay him back shortly.  Neither Huong nor Tu Thien The 2 Chieu, Inc. have repaid the loan, nor did they intend to when they accepted it.

59.    Over the next few days, however, Strong found out that it was Huong and Tu Thien Mobil with whom Khanh had partnered to make and sell cordyceps. At that point, Strong realized that Khanh and Huong had conspired to try and put him out of business by depriving him of cash, inventory, and the most profitable marketing channel US Nutrilab had developed.

60.    Strong then asked Huong to pay for the $159,860 of US Nutrilab product that Khanh had delivered to Huong, Huong threatened not to pay him unless Strong gave him another $27,790 worth of product.  Under duress, on April 1, Strong turned over the additional product that Huong demanded.  Neither Huong nor

1  Tu Thien Mobil have paid US Nutrilab for the product, or even acknowledged that

2  they owe him for the product, despite repeated demands by Strong.

3      61.    No later than April 6, 2016, Huong began advertising his Cordyceps

4  HL brand in the Vietnamese-language media around the United States, including on

5  television, radio, and the internet.

6      62.    As Huong and Khanh had secretly planned, Cordyceps HL is

7  distributed by NutriCel Gold, the dba of the company that Khanh secretly formed

8  some six weeks earlier.

9      **Defendants Copy Plaintiffs' Cordyceps 950 and Begin Selling Their Own**

10                        **Cordyceps Product.**

11      63.    In or about 2011 Strong designed the labeling for bottles of cordyceps,

12  but the design remained largely unused until November 2014, when the shipment to

13  Vietnam carried the now-distinctive label.

14      64.    The Cordyceps 950 label for the 90-capsule bottle is primarily dark red,

15  gold, and white.  The words "USDA ORGANIC" in black ink on a gold background

16  are bannered at the top of the front of the label.  Centered directly below in larger

17  green type against a white background are the words CORDYCEPS 950.

18      65.    Prominently featured below the name of the product is a color

19  photograph that Strong himself took of approximately one dozen cordyceps fungi

20  arrayed like a bunch of carrots.

21      66.    A banner across the bottom in gold sans serif type on a dark red

22  background reads: "90 Vegetarian Capsules / 950 mg each / Dietary Supplement."

23      67.    To the left of the front of the label of Cordyceps 950 is section of type

24  with the headline "GENUINE CORDYCEPS," and three paragraphs of smaller sans

25  serif type below that describes the product's attributes.  The first paragraph of text

26  reads: "Cordyceps may improve immunity by stimulating cells and specific

27  chemicals in the immune system.  It may also have activity against cancer cells and

28  may shrink tumor size, particularly with lung or skin cancers.*"  The 30-capsule and

60-capsule labels are essentially the same, but with a green band across the bottom.

68.     Defendants' cordyceps product label is substantially similar, and in some ways nearly identical, to the Cordyceps 950 label.  For example, Defendants' cordyceps labels are primarily dark red, gold, and white.  The words "USDA ORGANIC" in black ink with a gold background are bannered at the top of the front of label.  Centered directly below in larger gold type against a white background are the words CORDYCEPS HL.  ("HL" stands for Hai Le – Huong's nickname.)

69.     Prominently featured below the name of Defendants' product is a color photograph of approximately one dozen cordyceps fungi arrayed like a bunch of carrots.

70.     A banner across the bottom states in white sans serif type on a dark red background: "90 Vegetarian Capsules / 955 mg / Dietary Supplement."

71.      Like the Cordyceps 950 label, to the left of the front of the Defendants' label is block of type with the headline "GENUINE CORDYCEPS," and three paragraphs of smaller sans serif type below that describes the product's attributes. The first paragraph of text reads: "Cordyceps HL helps to improve the body's immune system by stimulating cells and specific chemicals in the immune system. It may also help to fight cancer cell growth by shrinking tumor size, particularly in some form of lung or skin cancers.*"  This nearly copies the Cordyceps 950 label language word for word, as do the second two paragraphs.

72.     In addition, the caps of the Cordyceps HL bottle are labeled *exactly* the same the cap of the Cordyceps 950 bottle, with each displaying a round green and white sticker bearing the words USDA ORGANIC in the identical sans serif font and type size.

73.     Attached hereto as Exhibit G and incorporated by reference herein is a true and correct copy of side-by-side images of the fronts of the Cordyceps 950 and the Cordyceps HL labels.

74.     Attached hereto as Exhibit H and incorporated by reference herein is a

1  true and correct copy of side-by-side images of the left sides of the Cordyceps 950
2  and Cordyceps HL labels.

3      75.    Attached hereto as Exhibit I and incorporated by reference herein is a
4  true and correct copy of side-by-side images of the labels on the caps of the
5  Cordyceps 950 and Cordyceps HL bottles.

6  **Defendants Huong Nguyen and Tu Thien Mobil Begin Advertising Their**
7  **Infringing Products and Defaming Plaintiffs and Their Products.**

8      76.    Defendants Huong's and Tu Thien Mobil's television advertisements
9  for Cordyceps HL, which appear on Vietnamese-language stations, including
10 Southern California's KJLA-TV, Channel 57.10, are in the form of lengthy
11 infomercials.  They feature models or actors, including Huong and Yen Duong, the
12 purported owner of the NutriCel Gold trademark.  Prominently featured are bottles
13 of Cordyceps HL with the substantially similar labels that make them virtually
14 indistinguishable from the Cordyceps 950 bottles created by Strong.

15     77.    In addition to selling Cordyceps HL, Huong uses the television
16 advertisements to make false statements about Cordyceps 950 and Strong, including
17 without limitation that Strong has stolen products, and that his products and those of
18 US Nutrilab are counterfeit and may contain toxic substances.  Huong and Tu Thien
19 Mobil know these statements are false because they know that the source of the
20 cordyceps that Plaintiffs use in Cordyceps 950 is the same source as their own
21 infringing Cordyceps HL product.  Furthermore, just days before Huong began
22 defaming Cordyceps 950, he was still running commercials touting Cordyceps 950.

23     78.    On the internet, Huong and Tu Thien Mobil have utilized at least three
24 websites, including YouTube.com, and two sites that they either own or control, to
25 advertise their infringing Cordyceps HL product.  The commercials on these sites
26 are similar if not identical to his television advertisements.  They also falsely state
27 that Strong has stolen products and that Plaintiffs' cordyceps products are
28 counterfeit and may contain toxic substances.

79.     Defendants Huong and Tu Thien Mobil have also purchased extensive radio advertising including without limitation on Vietnamese language stations in Orange County, California (KALI-FM 106.3), San Jose, California (KVVN-AM 1430), and Houston, Texas (KREH-AM 900).  The radio advertisements also falsely state that Strong has stolen products and that Plaintiffs' products are counterfeit and may contain toxic substances.

## FIRST CLAIM FOR RELIEF

### Federal Trademark Infringement (Lanham Act § 32, 15 U.S.C. 1114(1))

### (By Strong Nguyen Against Huong Nguyen, Tu Thien The Mobil Inc., Khanh V. Nguyen, Khanh V. Nguyen dba USA Logic, and DKY LLC dba NutriCel Gold)

80.     Plaintiffs re-allege and incorporate by reference Paragraphs 1 to 79 above as though fully set forth herein.

81.     Plaintiff Strong is the sole owner of the Cordyceps 950 trademark.

82.     Continuously since at least December 2014, Plaintiffs Strong and US Nutrilab have used the Cordyceps 950 mark in connection with and to identify their *cordyceps sinensis* capsule product and to distinguish said product from similar products offered by other companies.  They have done so by, and without limitation, prominently displaying the mark on bottles of *cordyceps sinensis* and in advertising and promotional materials distributed throughout the United States (including in this District), Canada, Australia, the European Union, and Vietnam.  Accordingly, products have been sold and distributed under the Cordyceps 950 mark throughout the United States (including in this District), Canada, Australia, the European Union, and Vietnam long before Huong put Cordyceps HL on the market.

83.     By virtue of this widespread advertising, sales, and distribution, the Cordyceps 950 mark has achieved secondary meaning or, in the alternative, is in the process of achieving secondary meaning.

84.     Defendants Huong and Tu Thien Mobil have infringed on Plaintiff

Strong's trademark in interstate commerce by various acts, including, without limitation, the selling, offering for sale, promotion and advertising of a *cordyceps sinensis* product they have called Cordyceps HL, a virtually identical name – or at least a confusingly similar name – in the same physical localities and marketing channels in which Strong began marketing and selling his registered Cordyceps 950 product well over a year earlier.

85. As such, Defendants Huong's and Tu Thien Mobil's use of the similar Cordyceps HL mark is likely to cause confusion among consumers.

86. Defendants Huong's and Tu Thien Mobil's use of this virtually identical mark is without permission or authority of Plaintiff Strong.

87. Defendants Huong's and Tu Thien Mobil's use of the confusingly similar mark has been deliberate, willful, and intentional; in conscious disregard of Plaintiff Strong's rights to the mark; and with intent to trade off Strong's goodwill in his registered mark and to confuse ordinary consumers.

88. Defendants Huong's and Tu Thien Mobil's infringing activities have caused and, unless enjoined by this Court, will continue to cause, irreparable injury and other damage to Plaintiff Strong's business, reputation, and goodwill in its federally registered trademark.

89. Plaintiff Strong has no adequate remedy at law.

**<u>SECOND CLAIM FOR RELIEF</u>**

**<u>False Designation of Origin (Lanham Act § 43(a), 15 U.S.C. 1125(a))</u>**

**(By Strong Nguyen Against Huong Nguyen, Tu Thien The Mobil Inc., Khanh V. Nguyen, Khanh V. Nguyen dba USA Logic, and DKY LLC dba NutriCel Gold)**

90. Plaintiffs re-allege and incorporate by reference Paragraphs 1 to 89 above as though fully set forth herein.

91. Defendants Huong and Tu Thien Mobil have used the Cordyceps 950 designation, or colorable imitations thereof, in interstate commerce.

92.     Said use is a false designation of origin, a false or misleading description and representation of fact that is likely to cause confusion and mistake, and to deceive members of the public into falsely believing there is an affiliation, connection or association of said Defendants with Plaintiff Strong, and as to the origin, sponsorship, or approval of said Defendants' products and commercial activities by Plaintiff Strong.

93.     Defendants Huong's and Tu Thien Mobil's use of the designation has been deliberate, willful, and intentional; in conscious disregard of Plaintiff Strong's rights to the mark; and with intent to trade off of Plaintiff Strong's goodwill and confuse ordinary consumers.

94.     Defendants Huong's and Tu Thien Mobil's wrongful activities have caused and, unless enjoined by this Court, will continue to cause, irreparable injury and other damage to Plaintiff Strong's business, reputation, and goodwill.

95.     Plaintiff Strong has no adequate remedy at law.

**THIRD CLAIM FOR RELIEF**

**Trade Dress Infringement (Lanham Act § 43(a), 15 U.S.C. 1125(a))**

**(By Strong Nguyen Against Huong Nguyen, Tu Thien The Mobil Inc., Khanh V. Nguyen, Khanh V. Nguyen dba USA Logic, and DKY LLC dba NutriCel Gold)**

96.     Plaintiffs re-allege and incorporate by reference Paragraphs 1 to 95 above as though fully set forth herein.

97.     The Cordyceps trade dress, i.e., the visual elements of the Cordyceps 950 packaging and labeling as described herein, is nonfunctional because it is not essential to the use of Cordyceps 950 and does not affect the cost or quality of Cordyceps 950.  Taken as a whole, the visual elements are intended to – and do – make the packaging distinctive such that consumers associate the packaging and labeling as coming from a single source.  The trade dress therefore has acquired a secondary meaning to consumers.

98.     Defendants Huong and Tu Thien Mobil have placed into interstate commerce their Cordyceps HL product utilizing packaging colors, layout, logos, words, terms, fonts, type sizes, photographs, symbols, and images that are identical or sufficiently similar to Plaintiffs' Cordyceps 950 such that, when taken as a whole, they cause confusion among the public, and deceive ordinary consumers into falsely believing there is an affiliation, connection or association of said Defendants' product with Plaintiffs and their product.

99.     Defendants Huong's and Tu Thien Mobil's trade dress infringement has been deliberate, willful, and intentional; in conscious disregard of Plaintiffs' rights; and with intent to trade off Plaintiffs goodwill in their product and confuse ordinary consumers.

100.   Defendants Huong's and Tu Thien Mobil's wrongful trade dress infringement has caused and, unless enjoined by this Court, will continue to cause, irreparable injury and other damage to Plaintiffs' business, reputation, and goodwill.

101.   Plaintiffs have no adequate remedy at law.

**FOURTH CLAIM FOR RELIEF**

**Contributory Trademark Infringement (Lanham Act § 32, 15 U.S.C. 1114(1))**

**(By Strong Nguyen Against Huong Nguyen, Tu Thien The Mobil Inc., Khanh V. Nguyen, Khanh V. Nguyen dba USA Logic, and DKY LLC dba NutriCel Gold.)**

102.   Plaintiffs re-allege and incorporate by reference Paragraphs 1 to 101 above as though fully set forth herein.

103.   To the extent not done directly, each Defendant has knowingly induced, caused, aided and abetted, or materially contributed to the other Defendants infringing on the Cordyceps 950 trademark.

104.    Said contributory Defendants have profited from their wrongful acts to the detriment of Plaintiff Strong.

105.   Said wrongful acts have caused and, unless injunctive relief is granted,

1  will continue to cause irreparable injury and other damage to Plaintiff Strong's

2  business, reputation, and goodwill.

3        106.   Plaintiff Strong has no adequate remedy at law.

4  ### FIFTH CLAIM FOR RELIEF

5  ### Contributory False Designation of Origin (Lanham Act § 43(a), 15 U.S.C.

6  ### 1125(a))

7  **(By Strong Nguyen Against Huong Nguyen, Tu Thien The Mobil Inc., Khanh**

8  **V. Nguyen, Khanh V. Nguyen dba USA Logic, and DKY LLC dba NutriCel**

9  **Gold.)**

10        107.   Plaintiffs re-allege and incorporate by reference Paragraphs 1 to 106

11  above as though fully set forth herein.

12        108.   To the extent not done directly, each Defendant has knowingly

13  induced, caused, aided and abetted, or materially contributed to the other Defendants

14  to use the Cordyceps 950 designation, or colorable imitations thereof, in interstate

15  commerce, which constitutes a false designation of origin.

16        109.   Said contributory Defendants have profited from their wrongful acts to

17  the detriment of Plaintiff Strong.

18        110.   Said wrongful acts have caused and, unless injunctive relief is granted,

19  will continue to cause irreparable injury and other damage to Plaintiff Strong's

20  business, reputation, and goodwill.

21        111.   Said wrongful acts have caused and, unless injunctive relief is granted,

22  will continue to cause irreparable injury and other damage to Plaintiffs' business,

23  reputation, and goodwill.

24        112.   Plaintiffs have no adequate remedy at law.

25  ///

26  ///

27  ///

28  ///

## SIXTH CLAIM FOR RELIEF

## Contributory Trade Dress Infringement (Lanham Act § 43(a), 15 U.S.C. 1125(a))

**(By Strong Nguyen Against Huong Nguyen, Tu Thien The Mobil Inc., Khanh V. Nguyen, Khanh V. Nguyen dba USA Logic, and DKY LLC dba NutriCel Gold)**

113.   Plaintiffs re-allege and incorporate by reference Paragraphs 1 to 112 above as though fully set forth herein.

114.   To the extent not done directly, each Defendant has knowingly induced, caused, aided and abetted, or materially contributed to the other Defendants' use of the Cordyceps 950 designation, or colorable imitations thereof, in interstate commerce, which constitutes a false designation of origin.

115.   Said contributory Defendants have profited from their wrongful acts to the detriment of Plaintiff Strong.

116.   Said wrongful acts have caused and, unless injunctive relief is granted, will continue to cause irreparable injury and other damage to Plaintiff Strong's business, reputation, and goodwill.

117.   Said wrongful acts have caused and, unless injunctive relief is granted, will continue to cause irreparable injury and other damage to Plaintiffs' business, reputation, and goodwill.

118.   Plaintiffs have no adequate remedy at law.

119.   To the extent not done directly, each Defendant has knowingly induced, caused, aided and abetted, or materially contributed to the other Defendants' infringement on the distinctive trade dress of the Plaintiffs' Cordyceps 950 product.

120.   Said contributory Defendants have profited from their wrongful acts to the detriment of Plaintiff Strong.

121.   Said wrongful acts have caused and, unless injunctive relief is granted,

1  will continue to cause irreparable injury and other damage to Plaintiff Strong's
2  business, reputation, and goodwill.

3      122.   Said wrongful acts have caused and, unless injunctive relief is granted,
4  will continue to cause irreparable injury and other damage to Plaintiffs' business,
5  reputation, and goodwill.

6      123.   Plaintiffs have no adequate remedy at law.

7                    **SEVENTH CLAIM FOR RELIEF**
8                **Common Law Trademark Infringement**
9  **(By Strong Nguyen Against Huong Nguyen, Tu Thien The Mobil Inc., Khanh**
10  **V. Nguyen, Khanh V. Nguyen dba USA Logic, and DKY LLC dba NutriCel**
11                              **Gold)**

12     124.   Plaintiffs re-allege and incorporate by reference Paragraphs 1 to 123
13  above as though fully set forth herein.

14     125.   Defendants' activities as set forth herein constitute infringement of
15  Plaintiff Strong's trademark rights under California common law.

16     126.   Defendants' wrongful and infringing activities have caused, and unless
17  enjoined by the Court will continue to cause, irreparable damage to Plaintiff
18  Strong's business, reputation, and goodwill in his Cordyceps 950 mark.

19     127.   Plaintiffs have no adequate remedy at law.

20                    **EIGHTH CLAIM FOR RELIEF**
21            **Copyright Infringement (17 U.S.C. § 101 et seq.)**
22  **(By Strong Nguyen Against Huong Nguyen, Tu Thien The Mobil Inc., Khanh**
23  **V. Nguyen, Khanh V. Nguyen dba USA Logic, and DKY LLC dba NutriCel**
24                              **Gold)**

25     128.   Plaintiffs re-allege and incorporate by reference Paragraphs 1 to 127
26  above as though full set forth herein.

27     129.   Strong is the originator and exclusive owner of the pictorial and graphic
28  works that adorn and comprise the labels for the 30-capsule, 60-capsule, and 90-

capsule bottles of Cordyceps 950.

130.   Defendants have copied, reproduced, distributed, adapted, or publicly displayed Strong's copyrighted works, or substantially similar facsimiles thereof, without the consent or authority of Strong, thereby directly infringing on his copyrights.

131.   Defendants' conduct constitutes infringement of Strong's copyrights and exclusive rights under copyright, in violation of 17 U.S.C. 101 et seq.

132.   The Defendants' infringing activities have been knowingly committed with a willful and malicious disregard of Strong's rights.

133.   As a result of Defendants' conduct, Strong has lost profits, and has been forced to expend a significant amount of time and expense, and has had to retain attorneys to which he is obligated to pay a reasonable fee.

134.   Defendants' wrongful and infringing activities have caused, and unless enjoined by the Court will continue to cause, irreparable damage to Plaintiff Strong's business, reputation, and goodwill in his Cordyceps 950 mark.

135.   Plaintiffs have no adequate remedy at law.

## NINTH CLAIM FOR RELIEF

### Contributory Copyright Infringement (17 U.S.C. § 101 et seq.)

**(By Strong Nguyen Against Huong Nguyen, Tu Thien The Mobil Inc., Khanh V. Nguyen, Khanh V. Nguyen dba USA Logic, and DKY LLC dba NutriCel Gold)**

136.   Plaintiffs re-allege and incorporate by reference Paragraphs 1 to 135 above as though full set forth herein.

137.   To the extent not done directly, each Defendant has knowingly induced, caused, or materially contributed to the unauthorized reproduction, adaption, public display, or distribution of copies of Strong's copyright works by one or more of the other Defendants, and therefore to the direct infringement of Strong's copyrighted images.

138.   To the extent not done directly, each Defendants' conduct constitutes infringement of Strong's copyrights and exclusive rights under copyright, in violation of 17 U.S.C. 101 et seq.

139.   The Defendants' infringing activities have been knowingly committed with a willful and malicious disregard of Strong's rights.

140.   As a result of Defendants' conduct, Strong has lost profits, and has been forced to expend a significant amount of time and expense, and has had to retain attorneys to which he is obligated to pay a reasonable fee.

141.   Defendants' wrongful and infringing activities have caused, and unless enjoined by the Court will continue to cause, irreparable damage to Plaintiff Strong's business, reputation, and goodwill in his Cordyceps 950 mark.

142.   Plaintiffs have no adequate remedy at law.

## TENTH CLAIM FOR RELIEF

## Fraud

**(By Strong Nguyen Against Huong Nguyen and Tu Thien The 2 Chieu, Inc.)**

143.   Plaintiffs re-allege and incorporate by reference Paragraphs 1 to 142 above as though full set forth herein.

144.   When in March 2016, Huong asked to borrow from Strong a total of $45,000 (the "March Loans") he represented that he and his business, Tu Thien The 2 Chieu, Inc., would pay back Strong.  This was a false representation. Huong knew it was false when he made it because at the time, he was secretly conspiring with Khanh to destroy Strong's business, and he believed that by draining Strong of cash he would not only unjustly enrich himself but would deprive Strong of the ability to recover once Huong and Khanh had destroyed the business.

145.   Huong also concealed material facts, including without limitation that Huong had been convicted of fraud and that Huong and Khanh had a plan to destroy Strong's business by means of the component acts herein described.

146.   Had Strong known any of these facts, he would not have lent Huong

the $45,000, of which $25,000 was lent to Huong in the name of one of Huong's companies, Tu Thien The 2 Chieu, Inc.

147.   Huong by his false representations and omissions described herein intended for Strong to rely on such false representations and omissions in order that he and Khanh could carry out their scheme.

148.   Strong, having no reason at the time of the loans not to believe Huong, and having no reason to suspect that Huong was concealing material information from him, reasonably relied on Huong's promises to repay him in three weeks.

149.   Huong's fraud has proximately caused Strong to suffer actual damages including without limitation the loss of $45,000.  Huong's fraud also has proximately caused Strong to suffer consequential damages in amount to be proven at trial but in no case is less than $387,650.

150.   Huong's acts were done maliciously, oppressively, or with intent to defraud, and Strong is entitled to punitive and exemplary damages.

## ELEVENTH CLAIM FOR RELIEF

### Constructive Fraud

**(By Strong Nguyen Against Khanh V. Nguyen)**

151.   Plaintiffs re-allege and incorporate by reference Paragraphs 1 to 150 above as though full set forth herein.

152.   As an officer of US Nutrilab, Defendant Khanh owed Strong a fiduciary duty.

153.   Khanh's wrongful acts, misstatements, omissions, and concealments described herein, including without limitation the failure to disclose material facts regarding his and Huong's scheme, were a breach of his fiduciary duty to Khanh by which Khanh gained an advantage.

154.   Because they were in fiduciary relationship and previously had amicable dealings, Strong reasonably relied on Khanh's statements and relied on Khanh to inform him of any material facts that otherwise would cause Strong harm.

155.   Khanh breach proximately caused Strong to suffer damages, including without limitation the loss of inventory, cash, the infringement of his trademark and copyright, lost profits, and incidental expenses.  These damages will be proven at trial but in no case are less than $432,650.

156.   Khanh's wrongful acts, misstatements, omissions, and concealments were done maliciously, oppressively, or with intent to defraud, and Strong is entitled to punitive and exemplary damages.

## TWELFTH CLAIM FOR RELIEF

### Breach of Fiduciary Duty

### (By US Nutrilab Against Khanh Van (Ken) Nguyen)

157.   Plaintiffs re-allege and incorporate by reference Paragraphs 1 to 156 above as though fully set forth herein.

158.   As an officer of US Nutrilab, Defendant Khanh at all times owed US Nutrilab the duties of utmost care, honesty, fidelity, and undivided loyalty.

159.   By his wrongful acts described herein, including without limitation conspiring and colluding with Defendant Huong to convert US Nutrilab assets, sabotaging US Nutrilab's contractual relationships, and generally placing his own interests above those of US Nutrilab, Khanh breached his duty of care and his duty of loyalty to US Nutrilab.

160.   Khanh's breach proximately caused US Nutrilab to suffer damages including without limitation loss of inventory, loss of intellectual property, economic losses, and loss of reputation in an amount to be proven at trial but in no case are less than $432,650.

161.   Khanh's acts were done maliciously, oppressively, or with the intent to defraud, and US Nutrilab is entitled to punitive and exemplary damages.

///

///

///

## THIRTEENTH CLAIM FOR RELIEF

### Breach of Fiduciary Duty

### (By Strong Nguyen Against Khanh Van (Ken) Nguyen)

162.   Plaintiffs re-allege and incorporate by reference Paragraphs 1 to 163 above as though fully set forth herein.

163.   US Nutrilab is a close corporation.  As a majority shareholder, Khanh owed co-shareholder Strong a duty of utmost care, honesty, fidelity, and undivided loyalty in all of his business dealings with Strong.

164.    By his wrongful acts described herein, including without limitation knowingly conspiring and colluding with Defendant Huong to convert US Nutrilab assets and infringe on Strong's marks and copyright, sabotaging US Nutrilab's contractual relationships, and generally placing his own interests above those of US Nutrilab, Khanh breached his duty of care and his duty of loyalty to Strong.

165.   Khanh's breach proximately caused Strong to suffer damages including without limitation loss of intellectual property, economic losses, and loss of reputation, but in no case are less than $432,650.

166.   Khanh's acts were done maliciously, oppressively, or with the intent to defraud, and Strong is entitled to punitive and exemplary damages.

## FOURTEENTH CLAIM FOR RELIEF

### Breach of Contract

### (By US Nutrilab Against Tu Thien The Mobil, Inc.)

167.   Plaintiffs re-allege and incorporate by reference Paragraphs 1 to 166 above as though fully set forth herein.

168.   Plaintiff US Nutrilab fulfilled all of its obligations to Tu Thien Mobil under the January 2016 Agreement.

169.   By failing to pay US Nutrilab $187,650 for the products as described herein, Tu Thien Mobil breached its agreement, damaging US Nutrilab in said amount.

## FIFTEENTH CLAIM FOR RELIEF

### Breach of Implied Covenant of Good Faith and Fair Dealing

### (By US Nutrilab Against Tu Thien The Mobil, Inc.)

170. Plaintiffs re-allege and incorporate by reference Paragraphs 1 to 169 above as though fully set forth herein.

171. Plaintiff US Nutrilab fulfilled all of its obligations to Tu Thien Mobil under the January 2016 Agreement.

172. Throughout the course of the performance of the January 2016 Agreement, Huong did not purchase cordyceps from other suppliers, did not make a cordyceps product himself, and, in sum, did not market or sell any cordyceps product that he did not buy directly from US Nutrilab. US Nutrilab therefore believed, and had reason to believe, that the January 2016 Agreement in which it granted exclusive distribution to Tu Thien Mobil, conferred upon it the reciprocal benefit that Tu Thien Mobil would not compete against it by either making a similar cordyceps product or by selling a non-US Nutrilab-sourced cordyceps product.

173. Because during the course of performance of the January 2016 Agreement and the course of dealing with Tu Thien Mobil since approximately February 2015, Tu Thien Mobil had always promoted, advertised and spoke well of US Nutrilab and its products, US Nutrilab had a reasonable expectation that Tu Thien Mobil and its owners, employees, and agents would not make disparaging or defamatory public statements about US Nutrilab, its employees, or its products.

174. Defendant Tu Thien Mobil had an obligation under the January 2016 Agreement to refrain from doing anything that would deprive US Nutrilab from realizing the benefit of the January 2016 Agreement. Defendant Tu Thien Mobil had an obligation, without limitation, of fair, open, and honest disclosure, and not to secure secret gains by connivance, deceit, or suppression of facts.

175. By Tu Thien Mobil's acts of bad faith described herein, including without limitation creating its own cordyceps product, selling a non-US Nutrilab

cordyceps product in the same market, and disparaging and defaming US Nutrilab and its products, Tu Thien Mobil deprived US Nutrilab from receiving the benefits of the January 2016 Agreement.

176.   In doing the acts described herein, Tu Thien Mobil breached the implied covenant of good faith and fair dealing, proximately causing damages to US Nutrilab in an amount to be proven at trial.

**SIXTEENTH CLAIM FOR RELIEF**

**Conversion**

**(By Strong Nguyen Against Huong Nguyen and Tu Thien The 2 Chieu, Inc.)**

177.   Plaintiffs re-allege and incorporate by reference Paragraphs 1 to 176 above as though fully set forth herein.

178.   Plaintiff Strong has a legal ownership and right to possession of the $45,000 that Defendant Huong and Tu Thien The 2 Chieu, Inc. borrowed in March 2016.

179.   Strong did not give Huong or Tu Thien The 2 Chieu, Inc. permission to keep the money beyond the time agreed upon.

180.   By refusing to return the $45,000, Huong and Tu Thien The 2 Chieu, Inc. have unlawfully converted personal property belonging to Strong to his own benefit and to the detriment of Strong.

181.   As a proximate result of Huong's and Tu Thien The 2 Chieu, Inc.'s act of conversion, Strong has been deprived of his property rights and suffered actual damages of $45,000.

182.   Huong's and Tu Thien The 2 Chieu, Inc.'s acts were done maliciously, oppressively, or with the intent to defraud, and Strong is entitled to punitive and exemplary damages.

///

///

///

## SEVENTEENTH CLAIM FOR RELIEF

### Conversion

**(By US Nutrilab Against Huong Nguyen, Tu Thien The Mobil Inc., Khanh V. Nguyen, Khanh V. Nguyen dba USA Logic, and DKY LLC dba NutriCel Gold)**

183.   Plaintiffs re-allege and incorporate by reference Paragraphs 1 to 182 above as though fully set forth herein.

184.   US Nutrilab owned and had the right to full possession of the $187,650 in products described herein.

185.   Defendants, and each of them, intentionally took control of said products in March 2016 and wrongfully converted them to their own use.  As such, Defendants have committed the tort of conversion.  Because Defendants conspired to commit said wrongful act, they are joint tortfeasors and each is liable for actual damages of $187,650.

186.   Defendants' acts were done maliciously, oppressively, or with the intent to defraud, and US Nutrilab is entitled to punitive and exemplary damages.

## EIGHTEENTH CLAIM FOR RELIEF

### Tortious Interference With Contract

**(By US Nutrilab Against Khanh Van (Ken) Nguyen and NutriCel Gold)**

187.   Plaintiffs re-allege and incorporate by reference Paragraphs 1 to 186 above as though fully set forth herein.

188.   In or about March 2016, US Nutrilab had a valid, existing and exclusive manufacturing contract with Titan, which as an officer of US Nutrilab, Defendant Khanh was aware of.

189.   By contracting on his own with Titan to manufacture a cordyceps product for himself and NutriCel Gold, and by undertaking other wrongful acts described herein to sabotage US Nutrilab's contract with Titan, Khanh knew or had substantial certainty that his actions would induce Titan to breach its agreement with US Nutrilab.

190.   The wrongful acts by Khanh proximately caused Titan to breach its agreement to provide exclusive and timely cordyceps products for US Nutrilab. Because of Khanh's tortious interference, US Nutrilab has been damaged in an amount to be proven at trial.

191.   Defendants' acts were done maliciously, oppressively, or with the intent to defraud, and US Nutrilab is entitled to punitive and exemplary damages.

### NINETEENTH CLAIM FOR RELIEF

### Slander (Cal. Civ. Code § 46)

### (By All Plaintiffs Against Huong Nguyen)

192.   Plaintiffs re-allege and incorporate by reference Paragraphs 1 to 191 above as though full set forth herein.

193.   The statements that Defendant Huong made or caused to have made on television, radio, and internet including without limitation that Plaintiff Strong stole products, makes or sells counterfeit products, and makes or sells products that contain toxic materials, are false.

194.   Huong knew the statements, and each of them, were false when he made them, and he made them with actual malice, or reckless disregard for whether they were true or false.

195.   Said statements are of the nature that they subject Strong and US Nutrilab to, and have proximately caused Strong and US Nutrilab to, suffer hatred, contempt, ridicule, or disgrace.  Each of these statements has proximately caused Strong and US Nutrilab injury through loss of reputation and goodwill, resulting in customers refusing to do business with them.  As to Strong, such statements have caused him great mental anguish.

196.   Huong's acts were done maliciously, oppressively, or with the intent to defraud, and Strong and US Nutrilab are entitled to punitive and exemplary damages.

///

## TWENTIETH CLAIM FOR RELIEF

### Slander Per Se

### (By Strong Nguyen Against Huong Nguyen)

197. Plaintiffs re-allege and incorporate by reference Paragraphs 1 to 196 above as though full set forth herein.

198. The defamatory statements made by Defendant Huong with respect to theft of products, and the sale of counterfeit and toxic products constitute slander per se because they accuse Strong of criminal acts and cause injury to his business or professional reputation.

199. Huong's acts were done maliciously, oppressively, or with the intent to defraud, and Strong is entitled to punitive and exemplary damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

On the First Through Seventh Claims for Relief  (Trademark Claims):

1. For a permanent injunction, enjoining Defendants, and each of them, and their  agents, servants, employees, successors, and assigns, and all others in concert and privity with them from:

    a.    Using Plaintiff Strong's trademark "Cordyceps 950" or any words confusingly similar thereto including without limitation the words "Cordyceps HL";

    b.    Committing any acts that would cause a likelihood of confusion, deception, or mistake as to the source, nature, or quality of Defendants' dietary supplement products;

    c.    Using Plaintiff Strong's "Cordyceps 950" trade dress, as described herein;

    d.    Aiding or abetting any other person from using Plaintiff's trademark and trade dress, or committing any acts that would

1                cause a likelihood of confusion as to the source, nature, or

2                quality of Defendants' dietary supplement products;

3       2.       For an order directing Defendants to deliver up and destroy all labels,

4 literature, websites, advertising, and other material bearing the infringing trademarks

5 and trade dress, and to expunge all products bearing the infringing trademark and

6 trade dress from Defendants' inventories;

7       3.       For an order that Defendants account to Plaintiffs for any and all profits

8 derived as a result of promoting, marketing, distributing, and selling of products

9 bearing the Defendants' infringing trademark and trade dress;

10       4.       For actual damages according to proof;

11       5.       For consequential and expectation damages according to proof;

12 <u>On the Eighth and Ninth Claims for Relief (Copyright Claims):</u>

13       1.       For a permanent injunction, enjoining Defendants, and each of them,

14 and their  agents, servants, employees, successors, and assigns, and all others in

15 concert and privity with them from infringing on Plaintiff's copyright and from

16 aiding or abetting any other person infringing on Plaintiff's copyright;

17       2.       For an order that Defendants account to Plaintiffs for any and all

18 revenues derived as a result of promoting, marketing, distributing, and selling of

19 products bearing the Defendants' copyright-infringing labels;

20       2.       For actual damages and profits pursuant to 17 U.S.C. 504(b);

21       3.       Alternative to actual damages and profits, statutory damages pursuant

22 to 17 U.S.C. 504(c), in the amount of $150,000 for each infringement, or such

23 amount the Court may deem proper pursuant to 17 U.S.C. 504(c);

24       4.       For attorney fees pursuant to 17 U.S.C. 505;

25 <u>On the Tenth Claim for Relief (Fraud):</u>

26       1.       For actual damages according to proof but in no case less than $45,000;

27       2.       For consequential and expectation damages pursuant to California Civil

28 Code § 3343 according to proof but in no case less than $80,000;

1    3.    For punitive and exemplary damages pursuant to California Civil Code
2   § 3294;
3   On the Eleventh Claim for Relief  (Constructive Fraud):
4        1.  For actual damages according to proof but in no case less than $232,650;
5        2.  For consequential and expectation damages according to proof but in no
6   case less than $80,000;
7        4.  For punitive and exemplary damages pursuant to California Civil Code
8   § 3294;
9   On the Twelfth and Thirteenth Claims for Relief  (Breaches of Fiduciary Duty):
10        1.  For actual damages according to proof;
11        2.  For consequential and expectation damages according to proof;
12   On the Fourteenth Claim for Relief (Breach of Contract):
13        1.  For compensatory damages according to proof;
14   On the Fifteenth Claim for Relief (Breach of the Implied Covenant of Good Faith
15   and Fair Dealing):
16        1.  For compensatory damages according to proof;
17   On the Sixteenth and Seventeenth Claims for Relief  (Conversion):
18        1.  For compensatory damages according to proof;
19        2.  For punitive and exemplary damages;
20   On the Eighteenth Claim for Relief (Tortious Interference With Contract):
21        1.  For compensatory damages according to proof;
22        2.  For punitive and exemplary damages;
23   On the Nineteenth and Twentieth and Claims for Relief  (Slander Claims):
24        1.    For compensatory damages according to proof;
25        2.    For special damages according to proof;
26        3.    For nominal damages;
27        4.    For punitive damages;
28   ///

<u>On All Claims for Relief:</u>

     1.  For prejudgment interest and costs;

     2.  For such other and further relief as the Court may deem proper.

DATED:  April 26, 2016         GREENBERG GROSS LLP

                      By:       /s/ Frank Mickadeit
                              Michael I. Katz
                              Frank Mickadeit
                              Attorneys for Plaintiffs

1

## **DEMAND FOR JURY TRIAL**

2
3
Counterclaimants hereby demand a trial by jury on the claims in this action, as permitted by law.

4

5
DATED:  April 26, 2016                GREENBERG GROSS LLP

6

7
By:        /s/ Frank Mickadeit
8
Michael I. Katz
9
Frank Mickadeit
10
Attorneys for Plaintiffs

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28